O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD JONATHAN H., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Deputy Commissioner of Operations, performing the duties and functions not reserved to the Commissioner of Social Security, <br><br> Defendant. | Case No. 2:17-cv-06936-KES <br><br> MEMORANDUM OPINION AND ORDER |

# I.
# BACKGROUND

On July 2, 2014, Richard Jonathan H. ("Plaintiff") filed an application for disability insurance benefits ("DIB") alleging disability commencing September 1, 2011. Administrative Record ("AR") 229-30. Plaintiff's application was based on his having Amyotrophic Lateral Sclerosis ("ALS"), also known as Lou Gehrig's disease. AR 34.

On September 23, 2015, Administrative Law Judge ("ALJ") Gail Reich conducted a hearing at which Plaintiff, who was represented by counsel, appeared

and testified, as did a vocational expert ("VE"). AR 31-55. On December 2, 2015, the ALJ issued a decision denying Plaintiff's application. AR 68-81. The ALJ found that as of September 1, 2011, through the last date insured (which was just 30 days later – September 30, 2011), Plaintiff's only medically determinable severe impairment was degenerative disc disease. AR 73. The ALJ explained that while Plaintiff was later diagnosed with ALS, "the medical evidence fails to show the condition existed and was severe prior to the date last insured." Id. The ALJ relied on a medical expert ("ME") who initially testified that Plaintiff equaled the Listing for ALS, then changed his testimony to state that Plaintiff's only functional limitation prior to September 30, 2011, involved difficulties fingering and handling.[1] AR 76, citing AR 40-46. With that as Plaintiff's only physical limitation, the ALJ found Plaintiff capable of performing his past relevant work as a real estate developer. Id.

Plaintiff requested review of this decision on February 1, 2016. AR 129. The Appeals Council granted review so that the ALJ could give "further consideration to the claimant's maximum residual capacity" based on new medical evidence and, "[i]f warranted by the expanded record, obtain supplemental evidence from the vocational expert …." AR 85-87. The ALJ was instructed to "evaluate and weigh the apparent inconsistencies" in the ME's testimony and to evaluate the opinions by Plaintiff's treating doctors, including opinions that

---

[1] The ALJ characterized the ME as having testified that Plaintiff's difficulties fingering/handling before September 30, 2011, were "as a result of his cervical degenerative disc disease." AR 76. In fact, the ME testified that Plaintiff's early "weakness in the hands" was "probably … part of ALS" although Plaintiff's ALS was "not diagnosed yet." AR 42. The ALJ acknowledged to the ME, "the numbness in the hands … you have tied to the ALS." AR 44. Regarding memory loss, the ALJ said, "Dr. Alpern did not see testing that confirmed such allegations." AR 76. In fact, Dr. Alpern testified that there was an "examination" that he considered "objective testing" of memory loss, but Plaintiff's memory loss before September 30, 2011, created "no limits" on Plaintiff's work activities. AR 44.

Plaintiff's ALS caused some functional limitations as early as the beginning of 2011. AR 85, citing AR 586-91 and AR 642. The ALJ was further instructed to obtain evidence from an ME to clarify the limiting effects and onset of Plaintiff's impairments. AR 86.

Pursuant to the remand order, ALJ Reich conducted a second, short hearing on March 15, 2017. AR 24-30. An ME and VE were present, but neither testified. AR 26. Plaintiff clarified that he last worked in "early 2011." AR 28. ALJ Reich published a second unfavorable decision on April 18, 2017. AR 12-23. This time, at step one of the sequential evaluation process, the ALJ found that Plaintiff had engaged in substantial gainful activity ("SGA") after September 1, 2011, the alleged onset date. AR 17. The ALJ further found that through the date last insured, there was no continuous 12-month period during which Plaintiff did not engage in SGA. Id. The ALJ therefore concluded that Plaintiff was not disabled. AR 18.

The Appeals Council denied Plaintiff's request for review of the April 18, 2017 decision. AR 1-6. Plaintiff now appeals that final decision.

## II.
## ISSUE PRESENTED

The sole issue presented is whether substantial evidence supports the ALJ's step one finding, i.e., that Plaintiff engaged in SGA after his alleged onset date. (Dkt. 16, Joint Stipulation ["JS"] at 3.)

Plaintiff contends that the income he received after September 1, 2011, all flowed from prior development projects and should be considered passive investment income. (JS at 5.) Alternatively, he argues that any work he did to obtain that income (e.g., reviewing financial statements and communicating with property managers) did not rise to the level of SGA. (Id.)

The Commissioner counters that Plaintiff's income of $250,000 per year is sufficiently high to trigger a legal presumption that he engaged in SGA. (JS at 7.)

According to the Commissioner, Plaintiff's work activity satisfies the definition of SGA because he was "run[ning]" a real estate development company (the "LLC") . (Id.)

## III.
## STANDARD OF REVIEW

A district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Comm'r of SSA, 466 F.3d 880, 882 (9th Cir. 2006)).

The Commissioner is to resolve conflicts in the evidence, and her determination must be upheld when the evidence is susceptible to one or more rational interpretations. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). ALJs need not explain how they resolved every conflict. Rather, if "the evidence can reasonably support either affirming or reversing," then the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick v. Chater, 157 F.3d 715, 720-21 (9th Cir. 1998). To determine whether substantial evidence supports a particular finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id. at 720.

Plaintiff argues that since the ALJ only cited Plaintiff's testimony as support for her finding that Plaintiff engaged in SGA, the Court cannot consider other evidence in the record. (JS at 10.) As legal support for this argument, Plaintiff

cites cases holding that courts reviewing agency decisions are limited to reviewing the agency's stated reasons and cannot provide "post hoc rationalizations." (Id. at 10-11.) Plaintiff also cites cases holding that ALJs must provide a sufficiently clear statement of their reasons to permit meaningful review. (Dkt. 19 at 3.) The Court does not interpret the ALJ's reference to relying on Plaintiff's testimony as meaning that she did not rely on any other evidence in the record. Rather, the ALJ was clarifying that, since Plaintiff had difficulty speaking at the second hearing, the ALJ would rely upon testimony given at the first hearing. The ALJ clearly stated her reason for concluding that Plaintiff is not disabled: she found that Plaintiff engaged in SGA after the alleged onset date, because he continued to play an "active role" in his real estate developments. AR 17. If substantial evidence in the record supports that finding, then the ALJ did not commit legal error regardless of whether the ALJ specifically cited that supporting evidence in her written decision. See Lewis v. Apfel, 236 F.3d 503, 511-12 (9th Cir. 2001) (holding that where ALJ analyzed medical history to "limited extent" without citing record, but medical reports supported ground that medical history conflicted with family testimony, this ground for rejecting family testimony was supported by substantial evidence).

## IV.
## DISCUSSION

A. **Step One of the Sequential Evaluation Process.**

At step one, the ALJ must determine whether the claimant is engaging in SGA. 20 CFR § 404.1520(b) (people engaged in SGA are not disabled, regardless of their medical condition). SGA is defined as work activity that is both substantial and gainful. 20 CFR § 404.1572. "Gainful" work activity is done "for pay or profit," whether or not a profit is realized. 20 CFR § 404.1572(b). "Substantial" work activity involves doing "significant physical or mental activities." 20 CFR § 404.1572(a). Work may be "substantial" even if it is done on a part-time basis. Id.

To evaluate whether self-employment constitutes SGA, the ALJ generally must consider the scope of the claimant's work activities and their value to the claimant's business. 20 CFR § 404.1575(a)(2). If an individual has earnings from self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574(b)(2) and 404.1575(c). The ALJ, however, must not "consider … income alone because the amount of income … actually received may depend on a number of different factors, such as capital investment and profit-sharing agreements." 20 CFR § 404.1575(a)(2). Instead, the regulations require using one of the following three tests to determine SGA:

> (i) <u>Test One</u>: You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business. Paragraphs (b)[2] and (c) of this section explain what we mean by significant services and substantial income for purposes of this test.
>
> (ii) <u>Test Two</u>: You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.
>
> (iii) <u>Test Three</u>: You have engaged in substantial gainful activity if

---

[2] Paragraph (b)(1) defines "significant services" as follows: "If you are not a farm landlord and you operate a business entirely by yourself, any services that you render are significant to the business. If your business involves the services of more than one person, we will consider you to be rendering significant services if you contribute more than half the total time required for the management of the business, or you render management services for more than 45 hours a month regardless of the total management time required by the business." 20 CFR § 404.1575(b)(1).

your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2)[3] when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

20 CFR § 404.1575(a)(2).

In contrast, "If you are doing work that involves minimal duties that make little or no demands on you and that are of little or no use to your employer, or to the operation of a business if you are self-employed, this does not show that you are working at the substantial gainful activity level." 20 CFR § 404.1573(b).

Applying these tests, rental income may arise from SGA or passive investment, depending on the circumstances. A landlord may engage in SGA if he/she performs work tasks such as advertising, collecting rents, bookkeeping, cleaning, maintaining the premises, etc. Owning rental property and paying a property manager to lease and manage it may not be SGA. See Torrez v. Berryhill, 2018 U.S. Dist. LEXIS 49729, at *8-10 (N.D. Cal. Mar. 26, 2018) (ALJ's finding that claimant "may have engaged" in SGA was not supported by substantial evidence where ALJ relied on "somewhat internally contradictory and confusing" tax records, claimant testified that she did not actively manage the rentals, and claimant paid a property manager).

B. **Summary of Relevant Evidence.**

    **1. Plaintiff's Work Activities and Earnings.**

From 1978-2003, Plaintiff worked as a shopping center developer for Watt Family Properties, Inc. ("Watt"). AR 235, 271. IRS records show Plaintiff's

---

[3] This regulation provides monthly "earning guidelines" for determining SGA for employees rather than self-employed persons. Neither party disputes the ALJ's finding that the earnings threshold for SGA in 2011 was $1,000 per month. See AR 17.

7

earnings from Watt from 2000-2003.[4]  AR 235.

Plaintiff identified himself as the managing member of the LLC from 2003 to 2007.[5]  AR 271.  In 2004, 2006, and 2007, Plaintiff realized income from the LLC described as self-employment income.  AR 236.  IRS records reflect no income from the LLC (or any other source) in 2005 or any year after 2007.  AR 235-26, 238.

On January 11, 2014, Plaintiff completed a Work Activity Report.[6]  AR 247-49.  He identified himself as the "owner" of the LLC.  AR 247.  He described his work activities before his illness as follows: "Procured land for shopping centers, obtained necessary entitlements from the city where land is, procured anchor tenants, hired architect, engineer, builder, etc., oversaw development."  Id.  Before his illness, he worked 10 hours per day, 5 or 6 days per week.  AR 272.

He described changes in his work activities because of his illness as follows: "mostly computer work, phone calls overseeing matters."  AR 247.  When asked if he still made management decisions after his illness, he responded, "Management decisions such as lease negotiations, rent relief, legal notices, etc."  AR 248.

In this same form, Plaintiff was asked to provide his self-employment income since October 18, 2013.  Id.  He stated that he had no self-employment income in December 2013 or January 2014.  Id.  Plaintiff ended the form by stating, "I have

---

[4] When Plaintiff applied for DIB, he acknowledged that his claim would be processed with information about his earnings from IRS records, and that if he disagreed with those records, he "must provide sufficient proof to SSA in order to change [his] earnings record."  AR 230.

[5] The record contains no evidence from the LLC's public filings with the California Secretary of State that might identify its managing member at various points in time.  The record also does not contain the LLC's Operating Agreement, which might define the work activities of the managing member.

[6] This must have been for a prior application, because it pre-dates Plaintiff's July 2, 2014 application in this case.  Compare AR 229 and AR 249.

8

not earned any <u>new</u> money since I was diagnosed. I live off income from investments." AR 249.

In a different Disability Report dated July 22, 2014, Plaintiff reported that his illness caused him to change his work activities as of July 10, 2013. AR 254; <u>see also</u> AR Index. He stopped working on November 20, 2013. <u>Id.</u> On July 22, 2014, he completed an Adult Function Report in which he stated that he "stopped work last year," i.e., sometime in 2013, because he could no longer travel to out-of-state development sites. AR 263, 270. His daily activities continued to include responding to e-mails and talking on the phone. AR 263. Also on July 22, 2014, he completed a Work History Report identifying 2003-2007 as the years he was the managing member of the LLC. AR 271.

At the first hearing in September 2015, Plaintiff testified that he last worked developing shopping centers in 2011 then corrected his answer to 2007. AR 35. He stopped working both because his illness made out-of-state travel "way too difficult" and "the economy went in the toilet," probably a reference to the Great Recession that started in 2007. <u>Id.</u>

After 2007, he and his wife continued to derive about $250,000 of annual income from the shopping centers he previously developed and still owned through the LLC. AR 36, 38. He explained that his shopping center development work was done "in partnership with others and we never sold any. So I have recurring income from the shopping centers." AR 36. In 2015, he still kept track of his properties by having property managers employed by the LLC send him monthly reports which he read. AR 38. When he received "financial statements," he would "send an email as to [his] questions" and "call if necessary" to talk with the property managers. AR 38.

After this testimony, the ALJ asked Plaintiff's counsel if he would like to comment. <u>Id.</u> Counsel responded, "I think we need to move forward. I mean, I don't think he's doing full-time work." <u>Id.</u>

At the second hearing, Plaintiff testified that he last worked in "early 2011," but he did not describe his work activities at that time. AR 28.

After the second hearing, Plaintiff requested review by the Appeals Council on the grounds that the ALJ "failed to follow the Appeals Council's order" and "violated" the remand order. AR 228. Despite knowing that the ALJ's second decision turned on SGA, Plaintiff did not provide any new evidence to the Appeals Council concerning when he engaged in what work activities.

**2. The Progression of Plaintiff's ALS.**

In 2007, Plaintiff started experiencing "weakness." AR 35. In 2008, Plaintiff began working out with a trainer. AR 50. Due to his family history, he suspected he had ALS and wanted to strengthen his muscles. AR 52. In August 2011 (i.e., just one month before his alleged onset date), he could lift 250 pounds from a squatting position. AR 51-52.

Due to right shoulder pain he suspected was caused by weight lighting, Plaintiff underwent an MRI of his neck on August 31, 2011. AR 401. The MRI revealed osteophytes, foraminal stenosis, and a thyroid nodule. Id. On September 12, 2011, he had an ultrasound that revealed multiple thyroid nodules. Id. On September 19, 2011, he underwent a needle aspiration, but this test was inconclusive as to the nature of the nodules. Id. Later needle aspirations suggested the potential for thyroid cancer. AR 393, 402. He had his thyroid gland surgically removed on October 18, 2011. AR 393.

In November 2011, a treating doctor observed "no focal neurologic defects." AR 398. In December 2011, Plaintiff's endocrinologist conducted a post-surgical examination and noted "intact" neurological function with otherwise "unremarkable" results. AR 394.

In late 2011 or early 2012, Plaintiff replaced his trainer with a physical therapist who focused on stretching rather than weight-lifting. AR 52. He started to limp. Id. By 2012, he could no longer walk his dog. AR 54. He eventually

went to the doctor because he was "falling all the time" and was officially diagnosed with ALS in 2013. AR 53. Plaintiff told Dr. Baloh that he first noticed signs of weakness in 2012 and muscle cramping in fall 2011. AR 588.

Dr. Brooks first saw Plaintiff on September 19, 2011. AR 591. Plaintiff complained at that time of symptoms that "had bothered him for at least six months including pain in the right shoulder …." Id. Dr. Brooks identified "limping and numbness" as the symptoms that "ultimately resulted in the diagnosis of ALS" in 2013. AR 642. Dr. Brooks described Plaintiff's work activities as follows:

> [B]ecause of the nature of his work, it was noted that he would have to fly, rent a car, and do a lot of walking. When he was out of town he would start to limp and was reluctant to restart his development business. He had developed cramps in his calves everyday at approximately 4:00 a.m., long before he was seen by me in [September] 2011.

AR 642. Based on this statement, Plaintiff had developed a limp before he stopped traveling out of town for business.

Dr. Baloh performed a physical examination in December 2013. AR 665. At that time, Plaintiff had normal muscle tone and bulk and 4/5 or 5/5 strength for all muscles tested. Id. His gait showed "very mild steppage." Id.

C. **The ALJ's Findings Regarding Work Activities and Earnings.**

In her first opinion, the ALJ found as follows:

> The claimant did not engage in substantial gainful activity during the period from his alleged onset date of September 1, 2011 through his date last insured of September 30, 2011. (20 CFR § 404.1571 et seq.) The claimant testified that he receives $250,000 per year from his developments. However, as such an amount is not present in the earnings records, the undersigned makes no outcome determinative finding for this step of the sequential evaluation.

11

AR 73.

In the second opinion, however, the ALJ relied on Plaintiff's testimony concerning his earnings to find that "claimant engaged in substantial gainful activity from September 1, 2011 through September 30, 2011." AR 17. The ALJ explained the basis for this finding as follows:

> The claimant was unable to testify at the second hearing due to difficulty speaking. Counsel, however, stated that he would rest on the testimony of the claimant at the prior hearing. Therefore, the undersigned relies upon the testimony taken at the first hearing. At the first hearing, the claimant testified that he received $250,000 per year from his real estate developments in which he continued to play an active role. Such significant sums of money clearly exceed the threshold for disqualifying [SGA]. In 2011, the monthly threshold for [SGA] was $1,000, for a total of $12,000 annually. Due to the claimant's testimony that he earned $250,000 annually, he does not meet the requirement for [DIB].
>
> Through September 30, 2011, there was no continuous 12-month period during which the claimant did not engage in [SGA].

AR 17.

Thus, the ALJ's key finding was that Plaintiff derived significant income after September 1, 2011, because he "continued to play an active role" in the LLC's business activities.[7] The ALJ did not identify which SGA test from 20 CFR

---

[7] Plaintiff suggests that the ALJ was not permitted to make this step one finding because of the step one "finding" in her first opinion. (See JS at 4.) In her first decision, the ALJ made "no outcome determinative finding" at step one, because the earnings records did not reflect $250,000 per year from Plaintiff's developments. AR 73. The ALJ specifically made "no . . . finding" in the first opinion, and Plaintiff cites no law that would prohibit her from making a finding in her second opinion, as long as substantial evidence supported that finding.

§ 404.1575(a)(2) she applied.

D. **Analysis.**

   **1. Plaintiff's Income from the LLC is Not "Investment Income" under POMS.**

   Plaintiff first argues that "his earnings are commensurate with investment income, and were not related to work performance. Therefore, they are not to be counted as income for SGA purposes." (JS at 5, citing the Programs Operations Manuel System ["POMS"] RS 02505.240 § A.3.)

   The POMS is an "internal Social Security Administration guidance document." Lockwood v. Comm'r SSA, 616 F.3d 1068, 1072 (9th Cir. 2010). The POMS constitutes agency interpretations that are "entitled to respect," but "only to the extent that those interpretations have the 'power to persuade.'" Id. at 1073 (citing Christensen v. Harris Cnty., 529 U.S. 576, 587 (2000)). POMS RS 02505.240 provides a "Summary of How Major Types of Remuneration Are Treated." The section cited by Plaintiff provides, "Do not include true investment income as earnings." POMS RS 02505.240 § A.3.

   The Commissioner counters that RS 02505.240 § B.40 clarifies that while the general rule is not to count investment income, such income should be counted "if received in the course of a trade or business, e.g., a dealer in stocks and bonds." POMS RS 02505.240 § B.40, citing Social Security Rule ("SSR") 64-10 (lending), 72-48 (purchase and redemption of tax sale certificates), 73-15 (real estate sales).

   In reply, Plaintiff "concedes that the defendant's position is well-taken," because Plaintiff's income from the LLC was received in the course of its business operations. (JS at 11.) The Court, therefore, will consider Plaintiff's second argument, i.e., that the ALJ's finding Plaintiff engaged in SGA after September 1, 2011, is not supported by substantial evidence.

**2. The SGA Tests.**

    a. Test One.

The only SGA test addressed in the JS is Test One. (JS at 7.) Under that test, Plaintiff engaged in SGA if he rendered services that were "significant" to the operation of the LLC and receive a substantial income from the LLC. 20 CFR § 404.1575(a)(2). Plaintiff does not dispute that his income was "substantial," but he argues that it did not result from his own "significant mental or physical activities." (JS at 7.)

The Commissioner quotes the regulation defining Test One and concludes that the services Plaintiff rendered to the LLC after September 1, 2011, were "significant" because his management decisions "involve[d] hundreds of thousands of dollars." (JS at 8.) The Commissioner, however, fails to quote or discuss the second sentence of 20 CFR § 404.1575(a)(2)(i) which says that "paragraph (b)" explains "what we mean by significant services … for purposes of this test."

Paragraph (b) does not link the "significance" of work activities to the amount of money at stake. Rather, under paragraph (b), a threshold question is whether Plaintiff operated the LLC "entirely by [himself]" or "if [his] business involves the services of more than one person." 20 CFR § 404.1575(b)(1). The LLC's business operations relied on the services of more than one person. AR 36, 38 (referring to development partners and property managers). Therefore, Plaintiff's services after September 1, 2011, were "significant" if he contributed "more than half the total time required for the management of the business, or [rendered] management services for more than 45 hours a month …." 20 CFR § 404.1575(b)(1).

There is conflicting evidence in the record concerning how much time Plaintiff spent on management tasks for the LLC after September 1, 2011. On the one hand, Plaintiff indicated that he worked fulltime on the LLC and only changed his work activities in July 2013, eventually stopping work in November 2013. AR

254, 263, 270, 272. This is consistent with Plaintiff's testimony about the progression of his ALS from 2011 through 2013 and the medical records summarized above. Those records generally show that before September 30, 2011, Plaintiff's ALS symptoms were mild (such as some hand numbness and muscle cramping) and would not have physically prevented Plaintiff from performing management tasks for the LLC that involved reviewing reports, talking on the phone, or using a computer. Even the symptoms visible in December 2013 (AR 665) would not have prevented Plaintiff from doing such work.

On the other hand, at the hearing, Plaintiff indicated that he stopped working in 2007 or in early 2011. AR 28, 35-36. After that, he still engaged in management tasks for the LLC. He described his work even after he became ill as consisting of "mostly computer work, phone calls overseeing matters" and "management decision such as lease negotiations, rent relief, legal notices, etc." AR 247-48. As of 2015, he still reviewed monthly reports and financial statements and communicated with the property managers about them. AR 38.

At step one, the claimant bears the burden of proving that he or she is not engaged in SGA. 20 C.F.R. § 404.1512; Bowen v. Yuckert, 482 U.S. 137, 146 n.5, (1987). Although the ALJ has the duty to develop an adequate record from which a reasonable conclusion can be drawn, he or she need not further develop a record from which a reasoned evaluation may be drawn. Dean v. Astrue, 2011 U.S. Dist. LEXIS 68117, at *18 (E.D. Cal. June 24, 2011) (citing Ribeiro v. Barnhart, 149 Fed. Appx. 7, 8 (1st Cir. 2005) (internal quotations and citations omitted)).

Here, Plaintiff's income triggered a presumption of SGA, and Plaintiff did not provide sufficient evidence to rebut that presumption[8]; indeed, he provided

---

[8] A claimant may rebut the presumption that he was engaged in SGA by presenting evidence that he was employed under "special conditions" that took the impairment into account—e.g., special assistance from other employees or specially arranged circumstances. See 20 C.F.R. § 404.1573(c).

evidence that supports the ALJ's reasoned evaluation that he engaged in SGA under Test One. That evidence includes his statements that he worked 50 to 60 hours a week as the managing member of the LLC until 2007, and did not significantly reduce his LLC-related tasks due to illness until 2013. AR 254, 263, 270, 272. These statements are consistent with the medical evidence that Plaintiff was physically strong in August 2011—indeed, he was able to squat 250 pounds—and experienced only minor physical symptoms prior to September 30, 2011. AR 50-51, 263, 270, 394, 398, 588, 591, 642. They are also consistent with Plaintiff's statements that he first significantly changed his work activity due to symptoms that made travel difficult, and those symptoms (such as limping) arose after September 30, 2011. AR 35, 52, 642. This evidence constitutes substantial evidence supporting a finding that Plaintiff spent at least 45 hours per month on management tasks for the LLC in September 2011.

Plaintiff contends that the "Disability Report at AR 254 … does not provide substantial evidence to support the ALJ's finding that [Plaintiff] engaged in SGA until July 2013 and thus did so in September 2011." (Dkt. 19 at 2.) Plaintiff's only reasons for discrediting this evidence, however, are that the ALJ did not cite it in her decision and it is inconsistent with other portions of Plaintiff's testimony. (Id.) As discussed under Standard of Review, while the ALJ did not cite this record specifically, this does not mean that the Court may not consider it if it supports the ALJ's reasoning.[9] Moreover, Plaintiff should not be permitted to give inconsistent

---

[9] Presumably, Plaintiff would not have the Court adopt a corollary rule—i.e., that the Court may not look beyond the ALJ's record citations for substantial evidence *detracting* from the ALJ's reasoning. Ninth Circuit case law is clear that, in determining whether substantial evidence supports a decision, the Court must review the record as a whole, weighing *both* supporting and detracting evidence. What the Court cannot do, however, is make up reasons to support a conclusion that the ALJ never gave. Here, the ALJ gave the reason that Plaintiff still played an active role in his business, and substantial evidence supports that reason.

testimony, fail to submit clarifying evidence to the Appeals Council, and then argue that the ALJ's decision lacks support because the ALJ apparently relied upon the unfavorable portions of his testimony.  Under these circumstances, the ALJ's step one finding was not legal error.  See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.").

          b.  Test Three

On the Court's invitation, the parties both submitted supplemental briefs ("SB") on several matters, including whether Test Three applies.  (Dkt. 17, 18, 19.)  In Defendant's SB, she contends that Test Three applies.  (See Dkt. 18 at 3.)  Under that test, Plaintiff's work activity would constitute SGA if it was worth at least $1,000 per month "when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing."  20 C.F.R. § 404.1575(a)(2)(iii).

Plaintiff describes the work he undertook even after the onset of his illness as "Management decisions such as lease negotiations, rent relief, legal notices, etc."  AR 248.  The Court suspects that these high-level business decisions, when considered in terms of their value to the business, would be worth at least $12,000 annually.  Nonetheless, given the guidelines in SSR 83-34, 1983 WL 31256, the Court declines to decide whether the ALJ's findings and conclusions would meet Test Three.  See SSR 83-34 (noting that development of comparability factors in Test Three must be "specific," and that "any doubt as to the comparability of the factors should be resolved in favor of the impaired individual"); see also Le v. Astrue, 540 F. Supp. 2d 1144, 1151 (C.D. Cal. 2008) ("Under test three, the record contains no evidence to support a finding that plaintiff's work was clearly worth wages amounting to SGA under the Commissioner's Earning Guidelines, in terms of its value to the farm or based upon what an employer would ordinarily pay a rice

farmer. . . . 'The lack of conclusive evidence as to the comparability of the required factors' results in a finding that the work plaintiff performed was not SGA." (citing SSR 83-34)); see also Camper v. Sullivan, 1991 WL 352422, at *2 (N.D. Cal. 1991) (noting that if individual's work is SGA under Test One, ALJ need not apply Tests Two and Three).

## V.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: August 22, 2018

_____
KAREN E. SCOTT
United States Magistrate Judge